Filed Sept. 19, 1884.

---

No. 11,024.

## McCord v. Wright, Administrator.

DECEDENTS' ESTATES.—*Mortgage.*—*Widow's Share of Real Estate.*—*Application of Personal Estate.*—*Widow's Claim for Reimbursement.*—*Precedence over General Creditors.*—*Statutes Construed.*—B. died the owner in fee simple of four separate parcels of real estate, leaving C. as his widow. Each of the parcels was encumbered by mortgage thereon, in the execution of which C. had joined with her husband. The mortgages were foreclosed and the mortgaged real estate sold for the payment of the ·mortgage debts. The value of the mortgaged real estate, at the time of B.'s death, was found to be $8,100, the one-third part of which real estate had descended to his widow, C., in fee simple, " free from all demands of creditors," except the mortgages thereon, in the execution of which she had joined with her husband. There was in the hands of W., the adminis-

McCord *v.* Wright, Administrator.

trator of the estate of B., the sum of $4,500 in money, realized from the personal estate of B., to be administered, no part of which sum had been applied to the payment of the mortgages on the decedent's real estate, or on the share thereof which descended to C. as his widow. C. filed a claim for reimbursement for the value of her share of the real estate out of the moneys realized from the personal estate of B., in preference to his general creditors.

*Held*, that C., as widow, had an equitable claim against the estate of B. to be reimbursed the full value of her share of B.'s lands, which had been sold and conveyed away from her for the payment of his debts secured by mortgages thereon.

*Held*, also, that the claim of C. for reimbursement out of the moneys realized from the personal estate of B., and in the hands of his administrator, upon the facts of this case and the statutes of this State applicable thereto, takes precedence of, and is entitled to priority in payment over, the general debts of B. and the claims of his general creditors.

From the Marion Circuit Court.

*W. Wallace* and *L. Wallace*, for appellant.

*J. M. Judah* and *O. B. Jameson*, for appellee.

Howk, C. J.—The appellee's decedent, Benjamin R. McCord, was seized in fee simple, at the time of his death, of divers parcels of real estate in Marion county, which are described in appellant's complaint, and may be described in this opinion as numbers 1, 2, 3 and 4. Each of these parcels was encumbered by mortgages executed by the decedent, in his lifetime, and by the appellant, then his wife and now his widow, as security for his debts, amounting, in the aggregate, to a sum largely in excess of the actual cash value of each and all of such parcels of real estate. After the death of Benjamin R. McCord each and all of the aforesaid mortgages were foreclosed by the holders thereof, in suits against the appellant, as his widow, and his other heirs at law, for the amounts due upon the respective mortgage debts and for the sale of the mortgaged premises. Afterwards orders of sale were issued on such judgments of foreclosure, and by virtue thereof all of such parcels of real estate, including the appellant's share thereof as the decedent's widow, were sold by the sheriff of Marion county, without any intervention by

the appellee as administrator of the decedent's estate to save, secure or relieve appellant's share of such real estate from the liens of the several mortgages and judgments of foreclosure. The sheriff's sales of all said parcels of real estate, including the appellant's share thereof as the decedent's widow, amounted in the aggregate to the sum of $21,078.60, as shown by the sheriff's returns to the several orders of sale, of which sum the one-fifth part, or $4,215.72, is claimed to have been the proceeds of the sheriff's sale of the undivided one-fifth part of all the said parcels of real estate, being the appellant's share thereof which descended to her as the widow of the decedent, at his death, " free from all demands of creditors " of the decedent, except the said mortgages thereon in the execution of which she had joined.   There was in the hands of the appellee, as the administrator of the decedent's estate, the sum of $4,500 in money, realized from the personal estate of the decedent, to be administered.

Upon the foregoing facts, which are substantially the same as those stated, at much greater length, in the appellant's complaint, she claimed that after the payment of the funeral expenses of the decedent, and of the expenses of his last illness and of the administration of his estate (her statutory allowance of $500, as the decedent's widow. having been received by her), all the personal estate of the decedent, in the hands of the appellee to be administered, ought to have been applied by him to save and relieve the appellant's share of all the said parcels of the decedent's real estate from the liens of the aforesaid mortgages thereon ; and that the said personal estate, not having been so applied at the proper time, ought now to be applied by the appellee to the reimbursement of the appellant for the sale as aforesaid of her said share of all the said parcels of the decedent's real estate ; and the appellant asked for an order of the court directing the appellee as such administrator to make such application of the money of his decedent's estate, in his hands, to the payment of her said claim.

Issues were joined upon the appellant's complaint by the appellee's answer in general denial, and were submitted to the court for trial. The court found generally, that the aggregate value of all the parcels of real estate, in the complaint described, at the time of the death of Benjamin R. McCord, and at the time of the sheriff's sales thereof, was $8,100, and that the interest of the appellant therein was one-third, as against the decedent's creditors; that the personal assets of the decedent's estate, in the hands of the appellee as administrator, was then the sum of $4,500, and the appellant was entitled to one-third thereof, after the payment of the costs of administration and of the expenses of the funeral and last sickness of the decedent, and that the residue of such personal estate should be applied to the other indebtedness of the decedent, as the court might direct.

Thereupon the court ordered that the appellee, as administrator, forthwith pay the appellant the sum of $1,200, and that thereafter, under the further order of the court, he should pay the appellant such further sum or sums of money as, with the said sum of $1,200, should amount to one-third of all the personal estate of the decedent remaining after the payment of the costs of administration and the expenses of the funeral and last sickness of the decedent, and after payment of the statutory allowance of $500 to the appellant, as widow: "Provided, however, that the aggregate principal sums so to be paid said plaintiff, shall in no event exceed the value of one-third of said real estate, to wit, twenty-seven hundred dollars."

Neither the appellee nor the appellant was satisfied with the finding and order of the court in this cause; but each of them separately moved the court in writing for a new trial. Each of these motions was overruled, each of the parties excepted, and each of them has assigned errors in this court and is asking for the reversal of the order below. Without setting out either the errors or cross errors, and without especial reference thereto, we will consider and decide the prin-

cipal and controlling questions presented by the record for our decision. We are of opinion that the facts stated in the appellant's complaint show an equitable claim or cause of action in her favor, against the money in the appellee's hands to be administered, sufficient to withstand the demurrer thereto. Under the provisions of section 2483, R. S. 1881, in force since May 6th, 1853, upon the death of her husband, Benjamin R. McCord, the appellant's share of his real estate, which could not be greater than one-third nor less than one-fifth of such real estate, according to its value, as against his creditors, descended to her in fee simple, free from all demands of his creditors. Her share of such real estate, it is true, was bound as security for such of her husband's debts as he had in his lifetime secured by mortgages thereon, in the execution of which she had joined; but none of his creditors, other than those secured by such mortgages, could directly or indirectly assert or enforce their demands against her share, under the statute, of his real estate. In *Perry* v. *Borton,* 25 Ind. 274, the court said: " The right of a widow, under our statute, to one-third of the real estate of her deceased husband is absolute against creditors, unless, by joining with her husband in a mortgage, she waives it. Such waiver can only operate in favor of the mortgagee; and other creditors can not surely reap advantages against her, from the fact that she has thus joined in a mortgage to one." Section 2483, *supra.* " To so hold, would not be to give her the share ' free from all demands of creditors,' as the statute requires. The whole estate, real and personal, except the share thereof given to the widow by law, must, if necessary, be applied to the payment of the debts of the deceased; and as between creditors, those who hold mortgage or judgment liens must be fully paid in preference to general creditors." 2 R. S. 1876, p. 534, section 109; section 2378, R. S. 1881.

There can be no doubt that it was the duty of the appellee, as administrator, under the statutes last cited, to apply the personal estate of his decedent in his hands to the pay-

ment of the mortgages on his decedent's real estate, in pref-
erence to the general debts of the decedent. As the appel-
lant's share of such real estate was merely bound as security
for her husband's debts described in the mortgages, we think
she had the right to demand that the administrator should so
apply such personal estate, if possible, as to relieve her share
of the real estate, or some part thereof, from the lien of the
mortgages thereon. The appellee, however, made no ap-
plication whatever of the personal estate of the decedent, in
his hands as administrator, or of any part thereof, to the pay-
ment of the mortgages on the decedent's real estate, or on
the appellant's share of such real estate; but he now has in
his possession the whole of such personal estate, and he
claims that the same should be distributed to the general
creditors of the decedent, to the entire exclusion of the claim
of the appellant thereon.

The claim of the appellant, upon the facts of this case, to
be reimbursed fully for her share of her husband's real es-
tate out of his personal estate, is not founded wholly, at least,
upon the equitable doctrine of subrogation, and is not hedged
in, therefore, by any of the rules applicable to that doctrine.
The claim is founded on rules, both of law and equity, higher
and more favored even than the doctrine of subrogation. This
court has always held that the provision for the widow in the
lands of her deceased husband, under our statute of descents,
is a substitute for dower under the common law, and is to be
equally as favored and protected by the courts as her former
right of dower. " There be three things," said Lord Coke,
" highly favored in law—life, liberty and dower." Co. Litt.
124, *b*. In *Kennedy* v. *Nedron*, 1 Dall. 415, the same view of
dower is thus expressed: " Dower is a legal, an equitable and
a moral right. It is favored in a high degree by law, and, next
to life and liberty, held sacred."

In *Noel* v. *Ewing*, 9 Ind. 37, it was held by this court that
the widow's provision in the lands of her husband, under our
statute of descents, is, and was intended to be, a substitute for

the widow's right of dower at common law. After quoting freely from the authorities, ancient and modern, for the purpose of showing that a dowress was a favorite of the law, and her right superior to that of creditors, speaking for the court, STUART, J., said: " In this doctrine, running through a period of several hundred years, and asserting a principle so congenial to natural equity, it is not dower itself which the law holds sacred. It is the purpose for which dower was reserved—it is the support of the widow out of the wealth she has helped to acquire, which the law favors. No matter what the name—whether dower or some other estate—they are all the same. The support of the widow is the end to be attained. The law of 1852 substituted a third in fee in lieu of a third for life. The courts must regard the substitute with the same favor, and administer it with the same liberality, extended to dower; and for the same reason—that the widow is a favorite of the law."

It will be seen, therefore, that the appellant's claim in the case in hand, that she is entitled, as against the general creditors of her deceased husband, to be fully reimbursed out of his personal estate for the value of her share of his lands which was sold by the sheriff for the payment of his mortgage debts, is a claim highly favored both in law and equity. Although analogous, in some particulars, to a claim for subrogation, yet the doctrine which supports the appellant's claim, and under which she has the right to have it considered and passed upon by the courts, is superior to and more favored than the doctrine of equitable subrogation. Her claim is founded in natural equity, and it was not necessary to its assertion and enforcement against the personal estate of the decedent, in the hands of the appellee to be administered, that she should first pay the balance due under the mortgages, or on judgments against the decedent. She is not asking in this case to be subrogated to the rights of either the mortgage or judgment creditors of the decedent. If she were seeking relief by subrogation, then the rule invoked by the appellee,

that the creditor's entire debt must be paid before the surety can claim to be subrogated to the rights of the creditor, would be applicable. See *Vert* v. *Voss*, 74 Ind. 565. The mortgage creditors had exhausted the real estate of the decedent, mortgaged to them respectively, and if there remained any unpaid balance of their respective debts, as to such balance they occupy no better position than the general creditors of the decedent. Neither they nor the judgment creditors of the decedent had any specific lien upon his personal estate. We conclude, therefore, that the claim of the appellant to be reimbursed for the value of her share of the decedent's lands, which descended to her as his widow, free from the claims of his creditors, and which was sold by the sheriff for the payment of his debts, is a valid claim against the personal estate of the decedent, in the hands of the appellee as his administrator, in preference to the claims of his general creditors; and that such claim is founded, not upon the doctrine of subrogation, but upon the higher and more favored equities, which protect the share of the widow in the lands of her husband from the claims of his creditors. *Morgan* v. *Sackett*, 57 Ind. 580.

Appellant's counsel also insist that the value of the appellant's share in the lands of her husband was conclusively determined by the amounts bid for the lands at the sales thereof by the sheriff, as shown by his returns to the orders of sale; and that the trial court erred in the admission of oral evidence of the actual value of the lands at the time of her husband's death. There was no error, we think, in the admission of this evidence. The court found, upon the evidence, that the actual value of the decedent's lands, at the time of his death, amounted to the sum of $8,100. Upon this finding the appellant, as the widow of the decedent, was entitled to the one-third part in value of his lands, "free from the demands of creditors." Upon the basis of this finding, and the view we have taken of the appellant's claim, the court ought to have allowed her, to reimburse her for the one-third

part in value of her husband's lands, the sum of $2,700, to be paid out of the personal estate of the decedent, in the hands of the appellee as administrator.  Error in the assessment of the amount of appellant's recovery, in that it was too small, was one of the causes assigned for a new trial in her motion therefor.  This cause for a new trial was well assigned, and for this cause we are of opinion that a new trial ought to have been granted.  Our conclusion is, therefore, that the court erred in overruling the appellant's motion for a new trial.  We have found no other error in the record.

The judgment is reversed, with costs, and the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.

Filed May 10, 1884.  Petition for a rehearing overruled Sept. 18, 1884.